IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON EUGENE JOHNSON, | No. CIV S-06-2856-WBS-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| R. COX, et al., | |
| Defendants. | |
| _____ / | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment or, in the alternative, summary adjudication (Doc. 28). Plaintiff has filed an opposition to the motion (Doc. 31).

## I. BACKGROUND

**A. Plaintiff's Allegations**

This case proceeds on plaintiff's amended complaint (Doc. 10), filed March 20, 2007. In his amended complaint, plaintiff alleges that he has been denied proper medical care in violation of his Eighth Amendment rights. Plaintiff claims that following surgery, where he had a full knee arthoplasty, he experienced pain in his left leg, not limited to the knee, but affecting

the entire leg.  Plaintiff claims that he continuously complained about this pain to Dr. James, but he did not receive adequate care and that his physical therapy sessions had been discontinued.  Plaintiff states that Dr. James prescribed him Naproxyn, which was ineffective in relieving his pain.  He also claims that in 2005, Dr. James referred him to a specialist, but as of January 2008, he had not yet been seen by the specialist, and in fact the referral to the specialist was ultimately denied.  Plaintiff's complaint indicates that Drs. Roche and Cox were aware of the alleged denial of proper health care, failed to prevent it, and in fact were directly involved in the delay of plaintiff seeing the specialist he was referred to in deliberate indifference to his serious medical needs.

**B. Undisputed Facts**

Plaintiff had knee surgery in August 2003.  He also has a history of hypertension, which has been followed regularly by medical staff for several years.  Plaintiff first saw defendant James in April 2004 at the chronic care clinic at High Desert State Prison (HDSP).  Plaintiff was seen by Dr. James several times over the following three years for a variety of complaints.  Plaintiff complained on a number of occasions of pain in his left knee and/or leg as well as his back.  During this time period, Dr. James prescribed plaintiff Naproxyn for his pain and gave plaintiff some exercises to do.

On June 15, 2005, plaintiff submitted an inmate appeal form 602, complaining about the lack of treatment for the pain in his leg.  On July 18, 2005, Dr. James referred plaintiff for an orthopedic consult.  This referral was forwarded to the Specialty Clinic for scheduling and plaintiff's name was to be added to the list in chronological order.  Plaintiff's appeal of his 602 was reviewed by defendant Cox at the first level.  Dr Cox was the acting Chief Physician and Surgeon at HDSP at the time of plaintiff's 602 appeal.  Dr. Cox granted plaintiff's appeal.  Plaintiff had requested that he be re-examined and prescibed suitable treatment, which Dr. Cox indicates happened, including his referral for an orthopedic evaluation.  Plaintiff then appealed Dr. Cox's decision to the second level, where defendant Roche partially granted the appeal.

Dr. Roche is the Chief Medical Officer (CMO) at HDSP. As CMO, Dr. Roche states that his duties include facilitating the transfers of patients to outside medical facilities when needed. Dr. Roche partially granted plaintiff's 602 appeal on September 6, 2005 at the second level. He states plaintiff was re-examined and referred to see an orthopedist and continued to receive Naproxyn to assist with his pain. Plaintiff's appeal was denied at the director's level, on December 19, 2005, and it was again indicated that plaintiff had been placed on the list for specialty clinic evaluation. However, there is no indication in the evidence that plaintiff has ever actually been seen by the specialist.[1]

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

---

[1] Plaintiff's opposition to the motion for summary judgment includes extensive copies of his medical records. Defendants have objected to the admission of these documents as evidence for the purpose of this motion because they are not properly authenticated. Accordingly, the court has not considered these documents in resolving this motion.

1  immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as
2  whatever is before the district court demonstrates that the standard for entry of summary
3  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

4         If the moving party meets its initial responsibility, the burden then shifts to the
5  opposing party to establish that a genuine issue as to any material fact actually does exist. See
6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
7  establish the existence of this factual dispute, the opposing party may not rely upon the
8  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
9  form of affidavits, and/or admissible discovery material, in support of its contention that the
10 dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
11 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
12 of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
13 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
14 that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
15 for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

16        In the endeavor to establish the existence of a factual dispute, the opposing party
17 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
18 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
19 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
20 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
21 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
22 committee's note on 1963 amendments).

23        In resolving the summary judgment motion, the court examines the pleadings,
24 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
25 any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed. See
26 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

Plaintiff claims that he was denied adequate medical treatment in deliberate indifference to his serious medical condition.  He claims the defendants have acted with deliberate indifference to his serious medical condition by failing to properly treat the pain in his leg and in delaying treatment from a specialist.  Defendants argue they are entitled to summary judgment because the undisputed facts demonstrate that plaintiff cannot prevail on his claims.  Defendants argue that plaintiff has been provided medical treatment, has not been refused treatment, and his treatment was within the community standard of care.  They claim at best plaintiff's argument amounts to a difference in opinion and he has not shown any deliberate indifference.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restricive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

1  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only
2  when two requirements are met: (1) objectively, the official's act or omission must be so serious
3  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)
4  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of
5  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison
6  official must have a "sufficiently culpable mind."  See id.

7  Deliberate indifference to a prisoner's serious illness or injury, or risks of serious
8  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at
9  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental
10 health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is
11 sufficiently serious if the failure to treat a prisoner's condition could result in further significant
12 injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d
13 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d
14 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir.
15 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the
16 condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's
17 daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.
18 See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

19 The requirement of deliberate indifference is less stringent in medical needs cases
20 than in other Eighth Amendment contexts because the responsibility to provide inmates with
21 medical care does not generally conflict with competing penological concerns.  See McGuckin,
22 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
23 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
24 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
25 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
26 treatment, or interference with medical treatment, may also constitute deliberate indifference.

1  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

2  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

3        Negligence in diagnosing or treating a medical condition does not, however, give

4  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

5  difference of opinion between the prisoner and medical providers concerning the appropriate

6  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

7  90 F.3d 330, 332 (9th Cir. 1996).

8  **A. Dr. James**

9        Dr. James was plaintiff's treating physician.  Plaintiff saw Dr. James a number of

10  times over the years for a variety of ailments.  He complained at different times regarding pain in

11  his leg and/or knee following his surgery.  Dr. James continued to treat plaintiff, and continued

12  prescribing pain medication he felt was appropriate.  During plaintiff's 602 appeal process, Dr.

13  James referred plaintiff to see a specialist for his leg pain.  Dr. James indicates in his declaration

14  that his duties as a physician at HDSP include

> the examination of patients, the diagnoses of illnesses, and the prescription
> and administration of medical treatment; performing or assisting in the
> performance of major and minor surgical operations; supervising pre- and
> post-operative care of surgical cases; treating sexually transmitted and
> other communicable diseases; ordering laboratory examinations and
> analyses, x-rays, and special diets; writing prescriptions; making rounds
> and reviewing reports, records, and the general progress of patients;
> instructing and supervising nurses, technicians, and personnel assigned for
> special training; attending and participating in staff conferences
> concerning the surgical, medical, and mental condition of various patients
> and their final diagnoses and treatment; preparing reports and related
> correspondence; and periodically serving as the officer-of-the-day.

22  (Declaration of Glenn James, MD, at 2).  No where does Dr. James indicate that he is responsible

23  for, or has any control over the actual scheduling of appointments with specialists.  Similarly,

24  plaintiff provides no evidence of any kind that Dr. James was responsible for or had control over

25  any delay in the scheduling of his appointment with a specialist.

26        As to the treatment plaintiff received, it is undisputed that  Dr. James treated

1  plaintiff on a number of occasions, providing him with prescriptions for pain medication and
2  referring him to an orthopedic specialist.  Plaintiff has not offered any evidence to establish that
3  Dr. James failed to provide any medical care.  Although he argues that the treatment he received
4  was insufficient, plaintiff admits that he continued to receive treatment from Dr. James.  To the
5  extent he complains about the sufficiency of the treatment he received from Dr. James, such a
6  claim would constitute a difference in opinion regarding treatment and cannot be the basis for
7  liability under § 1983.  See Jackson v. McIntosh, 90 F.3d at 332.
8         Defendants have met their initial burden of demonstrating the absence of a
9  genuine issue of material fact as to Dr. James.  Plaintiff has not offered any evidence to establish
10 that defendant James failed to provide any medical care or that he was responsible for the delay
11 or in any way hindered plaintiff being seen by a specialist.  See McGuckin v. Smith, 974 F.2d at
12 1062.  Plaintiff therefore has not met his burden of establishing that a genuine issue of material
13 fact actually exists as to the treatment Dr. James provided.

**B. Dr. Cox**

15        Dr. Cox, at the time relevant to this matter, was the acting Chief Physician and
16 Surgeon at HDSP.  His connection with plaintiff was limited to the review of plaintiff's 602
17 inmate appeal at the first level response.  Pursuant to this appeal, Dr. Cox granted plaintiff's
18 request that he be re-examined.  Accordingly,  he approved, to the extent he had the authority to
19 do so, plaintiff's referral for a consultation with an orthopedic specialist.   Dr. Cox never
20 examined or treated, nor was he ever requested to examine or treat, plaintiff.  In addition, neither
21 plaintiff nor Dr. Cox indicate that Dr. Cox had any control over the scheduling of plaintiff's
22 appointment to see the orthopedic specialist.  Dr. Cox granted plaintiff's appeal, and agreed he
23 should be seen by an orthopedic specialist.   Plaintiff has not offered any evidence to establish
24 that Dr. Cox failed to provide any medical care or that he was somehow directly responsible for
25 any delay in plaintiff's receiving specialty treatment.
26        Defendants have met their initial burden of demonstrating the absence of a

1  genuine issue of material fact as to Dr. Cox.  Plaintiff has not offered any evidence to establish
2  that defendant Cox failed to provide any medical care or that he was responsible for any delay or
3  in any way hindered plaintiff being seen by a specialist.  See id.  Plaintiff therefore has not met
4  his burden of establishing that a genuine issue of material fact actually exists as to Dr. Cox's
5  involvement in plaintiff's medical care.

### C. Dr. Roche

Dr. Roche is the Chief Medical Officer at HDSP.  In his declaration, Dr. Roche indicates that as CMO at HDSP, his "duties with regard to patient care are as follows:  Manage the medical staff to implement the community standard of medical care and facilitate transfers of patients to outside medical facilities when needed."  (Declaration of Steven Roche, MD at 2).  He further declares that in regards to plaintiff's 602 inmate appeal, it was found that plaintiff was in need of an evaluation by an orthopedic specialist, a referral for which had been forwarded to the Speciality Clinic for scheduling.  He therefore granted plaintiff's inmate appeal, in part, to allow plaintiff to be seen by an orthopedist.  He states "it was my professional opinion that the grant of his first level appeal and partial grant of his second level appeal provided Johnson with medically adequate and reasonable care for his left leg." (Declaration at 3).  It is reasonable to conclude that Dr. Roche believed that it was medically necessary for plaintiff to be seen by an orthopedist specialist, and that he was responsible for facilitating such an appointment.  Dr. Roche does not claim, nor is there any indication in the record, that at any time he found it was not medically necessary for plaintiff to be evaluated by an orthopedist.  Nor, is there any evidence that such an evaluation in fact occurred.

Plaintiff argues that a delay of two and a half years between the determination of the necessity for a referral to a specialist, and any actual evaluation was an act of deliberate indifference to his serious medical condition.  He argues that Dr. Roche is directly responsible for this delay.  Looking at the evidence in the light most favorable to plaintiff, Dr. Roche had the ability, in fact the duty, to facilitate plaintiff's evaluation by a specialist.  His declaration

indicates he is responsible for facilitating inmate patients to outside medical facilities when needed. He determined, through his decision at the second level in plaintiff's 602 appeal, that plaintiff's condition indicated it was medically necessary for him to be evaluated by a specialist. He does not claim, nor is there any evidence in the record to suggest, that such an evaluation has ever occurred, or that at some latter point in time the evaluation became no longer medically necessary. In fact, the defendants do not address plaintiff's claim regarding the delay in obtaining the specialist evaluation, even though plaintiff raised the issue in his complaint as well as in his opposition.

Dr. Roche's declaration itself has raised a genuine issue of material fact which precludes the granting of summary judgment. It is for a trier of fact to determine whether the delay, or tantamount refusal, in plaintiff's evaluation by an orthopedic specialist was significant enough to violate his constitutional rights, and whether Dr. Roche acted with deliberate indifference in failing to facilitate that evaluation.[2]

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment or summary adjudication (Doc. 28) be granted in part and denied in part;

2. That judgment be entered as a matter of law in favor of defendants James and Cox;

3. That this action proceed as to plaintiff's claim that defendant Roche violated his Eighth Amendment rights based on his failure to facilitate his referral to an orthopedic specialist; and

4. That this matter be referred back to the undersigned for further

---

[2] There is no evidence that Dr. Roche was directly involved in plaintiff's medical treatment. Accordingly, plaintiff cannot, and does not, claim that the medical care Dr. Roche provided violated his constitutional rights. The only claim regarding Dr. Roche relates to the delay in obtaining an evaluation by the specialist.

1 proceedings.

2       These findings and recommendations are submitted to the United States District
3 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days
4 after being served with these findings and recommendations, any party may file written
5 objections with the court.  The document should be captioned "Objections to Magistrate Judge's
6 Findings and Recommendations."  Failure to file objections within the specified time may waive
7 the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  July 3, 2008

                                                              _____
                                                              **CRAIG M. KELLISON**
                                                              UNITED STATES MAGISTRATE JUDGE