1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BYRON EUGENE JOHNSON,                No. CIV S-06-2856-WBS-CMK-P

12                 Plaintiff,

13        vs.                            AMENDED FINDINGS AND
                                         RECOMMENDATIONS
14   R. COX, et al.,

15                 Defendants.

16   _____/

17            Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment or,

19   in the alternative, summary adjudication (Doc. 28).  Plaintiff has filed an opposition to the

20   motion (Doc. 31).

21                              I.  BACKGROUND

22   A.  **Plaintiff's Allegations**

23            This case proceeds on plaintiff's amended complaint (Doc. 10), filed March 20,

24   2007.  In his amended complaint, plaintiff alleges that he has been denied proper medical care in

25   violation of his Eighth Amendment rights.  Plaintiff claims that following surgery, where he had

26   a full knee arthoplasty, he experienced pain in his left leg, not limited to the knee, but affecting

                                         1

the entire leg.  Plaintiff claims that he continuously complained about this pain to Dr. James, but he did not receive adequate care and that his physical therapy sessions had been discontinued. Plaintiff states that Dr. James prescribed him Naproxyn, which was ineffective in relieving his pain.  He also claims that in 2005, Dr. James referred him to a specialist, but as of January 2008, he had not yet been seen by the specialist, and in fact the referral to the specialist was ultimately denied.  Plaintiff's complaint indicates that Drs. Roche and Cox were aware of the alleged denial of proper health care, failed to prevent it, and in fact were directly involved in the delay of plaintiff seeing the specialist he was referred to in deliberate indifference to his serious medical needs.

**B.  <u>Undisputed Facts</u>**

Plaintiff had knee surgery in August 2003.  He also has a history of hypertension, which has been followed regularly by medical staff for several years.  Plaintiff first saw defendant James in April 2004 at the chronic care clinic at High Desert State Prison (HDSP). Plaintiff was seen by Dr. James several times over the following three years for a variety of complaints.  Plaintiff complained on a number of occasions of pain in his left knee and/or leg as well as his back.  During this time period, Dr. James prescribed plaintiff Naproxyn for his pain and gave plaintiff some exercises to do.

On June 15, 2005, plaintiff submitted an inmate appeal form 602, complaining about the lack of treatment for the pain in his leg.  On July 18, 2005, Dr. James referred plaintiff for an orthopedic consult.  This referral was forwarded to the Specialty Clinic for scheduling and plaintiff's name was to be added to the list in chronological order.  Plaintiff's appeal of his 602 was reviewed by defendant Cox at the first level.  Dr Cox was the acting Chief Physician and Surgeon at HDSP at the time of plaintiff's 602 appeal.  Dr. Cox granted plaintiff's appeal. Plaintiff had requested that he be re-examined and prescribed suitable treatment, which Dr. Cox indicates happened, including his referral for an orthopedic evaluation.  Plaintiff then appealed Dr. Cox's decision to the second level, where defendant Roche partially granted the appeal.

1    Dr. Roche is the Chief Medical Officer (CMO) at HDSP.  As CMO, Dr. Roche

2  states that his duties include facilitating the transfers of patients to outside medical facilities

3  when needed.  Dr. Roche partially granted plaintiff's 602 appeal on September 6, 2005 at the

4  second level.  He states plaintiff was re-examined and referred to see an orthopedist and

5  continued to receive Naproxyn to assist with his pain.  Plaintiff's appeal was denied at the

6  director's level, on December 19, 2005, and it was again indicated that plaintiff had been placed

7  on the list for specialty clinic evaluation.  However, there is no indication in the evidence that

8  plaintiff has ever actually been seen by the specialist.[1]

9                    **II.  STANDARD FOR SUMMARY JUDGMENT**

10    Summary judgment is appropriate when it is demonstrated that there exists "no

11  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

12  matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

13            . . . always bears the initial responsibility of informing the district court of
           the basis for its motion, and identifying those portions of "the pleadings,

14           depositions, answers to interrogatories, and admissions on file, together
           with the affidavits, if any," which it believes demonstrate the absence of a

15           genuine issue of material fact.

16  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

17  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

18  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

19  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

20  after adequate time for discovery and upon motion, against a party who fails to make a showing

21  sufficient to establish the existence of an element essential to that party's case, and on which that

22

23            [1]    Plaintiff's opposition to the motion for summary judgment includes extensive
     copies of his medical records.  Defendants have objected to the admission of these documents as

24   evidence for the purpose of this motion because they are not properly authenticated.  The court
     notes that many of these documents are also attached to defendants' declarations.  To the extent

25   that the document's authenticity is questioned, the court has not considered the documents in
     resolving this motion.   However, even if the documents were considered, it would not alter the

26   outcome.

1   party will bear the burden of proof at trial. <u>Id.</u> at 322.  "[A] complete failure of proof concerning

2   an essential element of the nonmoving party's case necessarily renders all other facts

3   immaterial." <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

4   whatever is before the district court demonstrates that the standard for entry of summary

5   judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

6            If the moving party meets its initial responsibility, the burden then shifts to the

7   opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u>

8   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

9   establish the existence of this factual dispute, the opposing party may not rely upon the

10  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11  form of affidavits, and/or admissible discovery material, in support of its contention that the

12  dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

13  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

14  of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

15  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and

16  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

17  for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

18           In the endeavor to establish the existence of a factual dispute, the opposing party

19  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21  versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

22  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

24  committee's note on 1963 amendments).

25  / / /

26  / / /

1    In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3  any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

4  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

5  before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

6  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

10  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

11  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

13                                    **III.  DISCUSSION**

14    Plaintiff claims that he was denied adequate medical treatment in deliberate

15  indifference to his serious medical condition.  He claims the defendants have acted with

16  deliberate indifference to his serious medical condition by failing to properly treat the pain in his

17  leg and in delaying treatment from a specialist.  Defendants argue they are entitled to summary

18  judgment because the undisputed facts demonstrate that plaintiff cannot prevail on his claims.

19  Defendants argue that plaintiff has been provided medical treatment, has not been refused

20  treatment, and his treatment was within the community standard of care.  They claim at best

21  plaintiff's argument amounts to a difference in opinion and he has not shown any deliberate

22  indifference.

23    The treatment a prisoner receives in prison and the conditions under which the

24  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

25  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

26  511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

5

of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

(1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only

when two requirements are met: (1) objectively, the official's act or omission must be so serious

such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison

official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at

105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental

health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is

sufficiently serious if the failure to treat a prisoner's condition could result in further significant

injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d

1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d

1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir.

1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the

condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's

daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.

See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases

than in other Eighth Amendment contexts because the responsibility to provide inmates with

medical care does not generally conflict with competing penological concerns. See McGuckin,

974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

1  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

2  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

3  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

4  treatment, or interference with medical treatment, may also constitute deliberate indifference.

5  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

6  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

7          Negligence in diagnosing or treating a medical condition does not, however, give

8  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

9  difference of opinion between the prisoner and medical providers concerning the appropriate

10  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

11  90 F.3d 330, 332 (9th Cir. 1996).

12  **A.  Dr. James**

13          Dr. James was plaintiff's treating physician.  Plaintiff saw Dr. James a number of

14  times over the years for a variety of ailments.  He complained at different times regarding pain in

15  his leg and/or knee following his surgery.  Dr. James continued to treat plaintiff, and continued

16  prescribing pain medication he felt was appropriate.  During plaintiff's 602 appeal process, Dr.

17  James referred plaintiff to see a specialist for his leg pain.  Dr. James indicates in his declaration

18  that his duties as a physician at HDSP include

19          the examination of patients, the diagnoses of illnesses, and the prescription
        and administration of medical treatment; performing or assisting in the
20        performance of major and minor surgical operations; supervising pre- and
        post-operative care of surgical cases; treating sexually transmitted and
21        other communicable diseases; ordering laboratory examinations and
        analyses, x-rays, and special diets; writing prescriptions; making rounds
22        and reviewing reports, records, and the general progress of patients;
        instructing and supervising nurses, technicians, and personnel assigned for
23        special training; attending and participating in staff conferences
        concerning the surgical, medical, and mental condition of various patients
24        and their final diagnoses and treatment; preparing reports and related
        correspondence; and periodically serving as the officer-of-the-day.

25

26  / / /

1    (Declaration of Glenn James, MD, at 2).  Nowhere does Dr. James indicate that he is responsible

2    for, or has any control over the actual scheduling of appointments with specialists.  Similarly,

3    plaintiff provides no evidence of any kind that Dr. James was responsible for or had control over

4    any delay in the scheduling of his appointment with a specialist.

5            As to the treatment plaintiff received, it is undisputed that  Dr. James treated

6    plaintiff on a number of occasions, providing him with prescriptions for pain medication and

7    referred him to an orthopedic specialist.  Plaintiff has not offered any evidence to establish that

8    Dr. James failed to provide any medical care.  Although he argues that the treatment he received

9    was insufficient, plaintiff admits that he continued to receive treatment from Dr. James.  To the

10   extent he complains about the sufficiency of the treatment he received from Dr. James, such a

11   claim would constitute a difference in opinion regarding treatment and cannot be the basis for

12   liability under § 1983.  See Jackson v. McIntosh, 90 F.3d at 332.

13           Defendants have met their initial burden of demonstrating the absence of a

14   genuine issue of material fact as to Dr. James.  Plaintiff has not offered any evidence to establish

15   that defendant James failed to provide any medical care or that he was responsible for the delay

16   or in any way hindered plaintiff being seen by a specialist.  See McGuckin v. Smith, 974 F.2d at

17   1062.  Plaintiff therefore has not met his burden of establishing that a genuine issue of material

18   fact actually exists as to the treatment Dr. James provided.

19   **B. Dr. Cox**

20           Dr. Cox, at the time relevant to this matter, was the acting Chief Physician and

21   Surgeon at HDSP.  His connection with plaintiff was limited to the review of plaintiff's 602

22   inmate appeal at the first level response.  Pursuant to this appeal, Dr. Cox granted plaintiff's

23   request that he be re-examined.  Accordingly,  he approved, to the extent he had the authority to

24   do so, plaintiff's referral for a consultation with an orthopedic specialist.   Dr. Cox never

25   examined or treated, nor was he ever requested to examine or treat, plaintiff.  In addition, neither

26   plaintiff nor Dr. Cox indicate that Dr. Cox had any control over the scheduling of plaintiff's

1  appointment to see the orthopedic specialist.  Dr. Cox granted plaintiff's appeal, and agreed he

2  should be seen by an orthopedic specialist.   Plaintiff has not offered any evidence to establish

3  that Dr. Cox failed to provide any medical care or that he was somehow directly responsible for

4  any delay in plaintiff's receiving specialty treatment.

5           Defendants have met their initial burden of demonstrating the absence of a

6  genuine issue of material fact as to Dr. Cox.  Plaintiff has not offered any evidence to establish

7  that defendant Cox failed to provide any medical care or that he was responsible for any delay or

8  in any way hindered plaintiff being seen by a specialist.  See id.  Plaintiff therefore has not met

9  his burden of establishing that a genuine issue of material fact actually exists as to Dr. Cox's

10  involvement in plaintiff's medical care.

11  **C.  Dr. Roche**

12           Dr. Roche is the Chief Medical Officer (:CMO") at HDSP.  In his declaration, Dr.

13  Roche indicates that as CMO at HDSP, his "duties with regard to patient care are as follows:

14  Manage the medical staff to implement the community standard of medical care and facilitate

15  transfers of patients to outside medical facilities when needed." (Declaration of Steven Roche,

16  MD at 2).  He further declares that in regards to plaintiff's 602 inmate appeal, it was found that

17  plaintiff was in need of an evaluation by an orthopedic specialist, a referral for which had been

18  forwarded to the Speciality Clinic for scheduling.  He therefore granted plaintiff's inmate appeal,

19  in part, to allow plaintiff to be seen by an orthopedist.  He states "it was my professional opinion

20  that the grant of his first level appeal and partial grant of his second level appeal provided

21  Johnson with medically adequate and reasonable care for his left leg."  (Declaration at 3).

22       In Roche's objections to the original findings and recommendations, he correctly notes

23  that his responsibilities to petitioner culminated in referring him to the Specialty Clinic for

24  scheduling.  While the declaration does not explicitly state that Dr. Roche personally made sure

25  plaintiff had been placed on the list by taking some affirmative action of his own, the issue of list

26  placement is not a disputed issue in this case.  Specifically, plaintiff does not allege that Dr.

1   Roche failed to place his name on the referral list or that the list was not forwarded to the

2   Specialty Clinic for scheduling.  Petitioner's claim arises from the alleged delay in obtaining the

3   examination by the outside specialist following the placement of his name on the list which

4   cannot be attributed to any act or omission by Roche under the facts set forth herein.  What is

5   clear from the declaration and objections is that Dr. Roche's duty was to facilitate plaintiff's

6   referral to the Specialty Clinic and that this was done.   Plaintiff does not dispute these facts.

7   After fulfilling his duty as CMO by placing plaintiff's name on the referral list and

8   sending that list to the Specialty Clinic for scheduling, Dr. Roche essentially acted in a

9   supervisory role.  In other words, once the list was sent to the Specialty Clinic, Dr. Roche no

10   longer had any direct responsibility over the delegated task of scheduling plaintiff for the outside

11   consultation.  Supervisory personnel are generally not liable under § 1983 for the actions of their

12   subordinates.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

13   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

14   violations of subordinates if the supervisor personally participated in or directed the violations, or

15   had actual knowledge of the violations and failed to act to prevent them.  See id.  When a

16   defendant holds a supervisory position, the causal link between him and the claimed

17   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

18   (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

19   allegations concerning the involvement of supervisory personnel in civil rights violations are not

20   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

21   The court acknowledges plaintiff's difficult position.  Living in pain for several

22   years is generally unacceptable, and that is no different when an individual is incarcerated.  A

23   delay of two and a half years between the determination of the necessity for a referral to a

24   specialist, and any actual evaluation indicates that somewhere along the way the system may

25   have broken down and caused plaintiff to suffer as a result.  However, plaintiff has not provided

26   any evidence to establish that Dr. Roche – as a supervisory defendant with respect to plaintiff's

10

1  claim that his rights were violated by the delay in scheduling the outside consultation – was

2  directly responsible for the delay or had actual knowledge of the delay.  At best, plaintiff has

3  shown that Dr. Roche was negligent in his position as a supervisor for failing to ensure his

4  subordinates followed through with his instructions.  However, this is insufficient to establish

5  liability under § 1983.[2]  The only evidence plaintiff provides in his attempt to establish the

6  existence of a factual dispute is a "Notification of Decision on Outside Services Request," dated

7  December 13, 2006, which states that his request for outside services had been reviewed by the

8  "MAR committee" and was denied.  The only reason provided was simply: "not at this time."

9  (Plaintiff's Opposition to Defendants' Motion to Dismiss, Exhibit B (Doc. 31, at 161 of 167)).

10  Plaintiff fails to link this document to Dr. Roche, or to otherwise explain what this document is,

11  and provides no other evidence in support of his claim against Dr. Roche.[3]  Accordingly, plaintiff

12  cannot establish Dr. Roche acted with deliberate indifference to his serious medical condition.

13  Because plaintiff cannot establish a necessary element of his claim against Dr. Roche, summary

14  judgment is appropriate.

15

16                              **IV.  CONCLUSION**

17            Based on the foregoing, the undersigned recommends that:

18            1.        Defendants' motion for summary judgment or summary adjudication

19  (Doc. 28) be granted;

20            2.        Judgment be entered in favor of defendants; and

21

22        [2]        There is no evidence that Dr. Roche was directly involved in plaintiff's medical
23  treatment.  Accordingly, plaintiff cannot, and does not, claim that the medical care Dr. Roche
    provided violated his constitutional rights.  The only claim regarding Dr. Roche relates to the
24  delay in obtaining an evaluation by the specialist.

25        [3]        It may well be that some other individuals – for example those actually
    responsible for scheduling plaintiff's outside consultation pursuant to Dr. Roche's direction or
26  members of the "MAR committee" – may have been personally responsible for the delay.
    Plaintiff does not, however, name any such individuals in this case.

1       3.      The Clerk of the Court be directed to close this case.

2               These findings and recommendations are submitted to the United States District

3    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

4    after being served with these findings and recommendations, any party may file written

5    objections with the court.  The document should be captioned "Objections to Magistrate Judge's

6    Findings and Recommendations."  Failure to file objections within the specified time may waive

7    the right to appeal.  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8

9
     DATED: August 4, 2008

10

11                                                  _____
                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26